# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

EDWARD VERHOVEC,

                Plaintiff,      :      Case No. 3:14-cv-363

                                          District Judge Walter Herbert Rice
  - vs -                          Magistrate Judge Michael R. Merz

CITY OF TROTWOOD, OHIO, et al.,

                Defendants.    :

## DECISION AND ORDER ON MOTIONS FOR STAY; SECOND SUPPLEMENTAL OPINION ON MOTION FOR PREJUDGMENT POSSESSION

       This case is before the Court on a Motion to Stay Proceedings and Extend Deadlines filed by Counterclaim Defendant William Walker, but seeking a forty-five day stay of all proceedings on behalf of himself and the Plaintiff, Edward Verhovec, because of an asserted incapacitating illness of Plaintiff's counsel, R. Paul Cushion, Esq. (Doc. No. 56).  That Motion was filed on March 2, 2015.  On March 4, 2015, Defendants responded by agreeing to a twenty-one day stay for the Plaintiff, but opposing any stay for Mr. Walker (Doc. No. 58, PageID 451).[1]  Neither Walker nor anyone on behalf of Plaintiff Verhovec has filed a reply memorandum.

---

[1] When any document is filed with this Court, the Court's electronic filing system affixes a unique Page Identification Number in the upper right hand corner of every page.  The attention of the parties is directed to this Magistrate Judge's Standing Order of May 8, 2014, which provides in pertinent part "All references to the record in this Court must be to the filed document by title, docket number, and PageID reference.  (E.g., Defendant's Motion

1

On March 20, 2015, Walker filed a Motion to Stay Discovery (Doc. No. 64) reporting that Defendants had, on February 24, 2015, served on him requests for admissions under Fed. R. Civ. P. 36, a request for production of documents under Fed. R. Civ. P. 34, and interrogatories under Fed. R. Civ. P. 33. Walker represents that he will be prejudiced by being compelled to respond to the discovery (1) before the Court rules on the privilege claims made with respect to the recording which has been delivered to the Court for *in camera* inspection or (2) before he can have "access to plaintiff's counsel/records." *Id.* at PageID 493. Defendants opposed the Motion (Doc. No. 65).

In the meantime, the Court has had no contact from or on behalf of Attorney Cushion. A telephone call to the number he listed in his appearance produced a response that he had not been at that number since November 2013. A different telephone number furnished by a person at the original number produced a voicemail recording indicating it was Mr. Cushion's office, but the call was not returned. When the Court attempted to place the call again, a disconnect notice was received.

In the Motion, Walker represents that Cushion has suffered a stroke and is in a skilled nursing center for rehabilitation. A telephone call to that facility was unanswered,[2] so the Court has been unable to corroborate this information.

Walker has merely asserted, without explanation or proof, that his defenses "are inextricably intertwined with Verhovec's claims/defenses." (Doc. No. 56, PageID 436.)

The case is also before the Court on Objections by Verhovec (Doc. No. 42), Cushion (Doc. No. 43), and Walker (Doc. No. 44) to the Magistrate Judge's Order of Prejudgment

---

to Dismiss, Doc. No. 27, PageID ___.)" The large majority of cases before this Magistrate Judge are habeas corpus cases with large state court records and correct citation to the record is critical to judicial economy. Therefore, nonconforming filings will be stricken.

[2] The Court assumes that even if Mr. Cushion is there, the facility would be unable to confirm his presence because of HIPAA.

2

Possession (Doc. No. 40). Cushion and Verhovec merely adopt Walker's Objections, so references will be made only to Walker's filing. Judge Rice recommitted the matter to the Magistrate Judge for reconsideration in light of the Objections (Doc. No. 45). The Objections raise both substantive and procedural points. The procedural objections were found to be without merit on February 23, 2015 (Supplemental Opinion, Doc. No. 52). The substantive objections were ordered briefed and are dealt with hereinafter.

This is the second piece of litigation involving many of the same actors. On June 29, 2011, Walker filed a mandamus petition on behalf of Verhovec in the Montgomery County Common Pleas Court seeking to compel the City of Trotwood, Ohio, and its Manager, Defendant Michael Lucking, to produce records under the Ohio Public Records Act, Ohio Revised Code § 149.43 (*State, ex rel Verhovec, v. Trotwood*, Case No. 2011 CV 04658, Verified Complaint ¶ 1, hereafter, the Mandamus Case).[3] This Court may properly take judicial notice of the records in the mandamus case. *Graham v. Smith*, 292 F. Supp. 2d 153, 155, n.2 (D. Me. 2003); *Ward v. Wolfenbarger*, 323 F. Supp. 2d 818, 821 (E.D. Mich. 2004) (holding that a federal district court can take judicial notice of another court's website.)

The case was assigned to The Honorable Dennis Langer and referred by him to The Honorable David Fuchsman, Civil Magistrate for the Montgomery County Common Pleas Court. On March 14, 2012, Magistrate Fuchsman set the case for trial on June 4, 2012. On March 23, 2012, Magistrate Fuchsman convened an in-person conference which was attended by Steven McHugh and Amelia Blankenship, employed attorneys of the City of Trotwood, Kevin Lantz, the retained attorney in the Mandamus Case for Trotwood and City Manager Lucking, Walker, and Magistrate Fuchsman.

---

[3] The docket and many of the documents in the Mandamus Case are available online at the website of the Montgomery County Clerk of Courts, Michael Brush, at www.clerk.co.montgomery.oh.us (visited March 25, 2015).

This Court's knowledge of what transpired during that conference is derived from conducting an *in camera* inspection of a recording made of part of the conference.[4] The case was not set for mediation that day. Whatever the initial purpose of the conference,[5] Magistrate Fuchsman quickly turned to the possibility of settlement. Walker disclosed that his client, Verhovec, was essentially working to gather documents for Attorney Cushion. Discussion turned on what Verhovec's goal(s) were in the Mandamus Case and Walker emphasized that he was, at least primarily, attempting to get the documents rather than to recover damages. That said, Magistrate Fuchsman concentrated on how that goal could be achieved for Verhovec and the Respondents could avoid further expense and damages liability. At issue in part were the availability of images held by Redflex,[6] presumably on contract with the City of Trotwood. Also at issue was the question whether the Common Pleas Court was dealing with one or more than one request for records from Verhovec and which version of the Public Records Act should apply. Magistrate Fuchsman repeatedly urged defense counsel to call Redflex to find out what images were available.

At 47:10 into the conference, Attorney Walker asked for an opportunity to consult Verhovec about the proposals and he and Magistrate Fuchsman left the room. Attorney Lantz also asked if the Respondents could have some caucus time. For the next three minutes and fifty seconds, Attorneys McHugh, Blankenship, and Lantz consulted with one another before

---

[4] The recording is on a CD delivered to the Court on February 26, 2015 (Doc. No. 55). The CD is accompanied by a note which reads "Dawn Frick. Please find enclosed a disc with the recording I was ordered to give to you. I have no other copies. /s/ *Ed Verhovec*." The disc is thus purportedly the property ordered delivered to defense counsel by the Court on January 20, 2015 (Doc. No. 40) and thus the subject of Judge Rice's Recommittal Order of February 4, 2015 (Doc. No. 45).

[5] There is some indication in the recording of the conference that argument on the pending motion for summary judgment was expected by defense counsel.

[6] Redflex Group advertises itself on its website as "Delivering World-leading Digital Traffic Enforcement Solutions." See www.redflex.com (visited March 25, 2015).

Magistrate Fuchsman and Attorney Walker re-entered and the discussion turned to scheduling next events in the Mandamus Case.

Defendants claim the content of the conversation among McHugh, Blankenship, and Lantz is protected by the attorney-client communication privilege (Defendants' Memorandum, Doc. No. 60).  Walker does not deny that it was an attorney-client communication, but asserts it is not entitled to protection because of the crime/fraud exception to that protection (Third-Party Memorandum, Doc. No. 61).

The attorney-client privilege applies (1) where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) are made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or the legal adviser, (8) except the protection be waived. *Reed v. Baxter,* 134 F.3d 351, 356 (6th Cir. 1998); *Humphreys, Hutcheson and Moseley v. Donovan*, 755 F.2d 1211, 1219 (6th Cir. 1985) (quoting 8 J. Wigmore, Evidence in Trials at Common Law § 2292, at 554 (McNaughton rev. 1961)).  A classic alternative formulation provides the privilege for attorney-client communications applies only if (1) the asserted holder of the privilege is or sought to become a client;  (2) the person to whom the communication was made (a) is a member of the bar of a court or his subordinate and (b) in connection with this communication is acting as a lawyer;  (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion of law or (ii) legal services or (iii) assistance in some legal proceeding and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.  *United States v. United Shoe Machinery*

5

*Corp*, 89 F. Supp. 357, 358 (D.Mass. 1950) (Wyzanski, J.), adopted by the Sixth Circuit in *United States v. Goldfarb*, 328 F.2d 280 (6th Cir. 1964).

Because Walker does not dispute that it was an attorney-client communication, no extended discussion of initial application of the privilege is required.  Attorneys McHugh and Blankenship were plainly client representatives and Attorney Lantz was the client's attorney for the trial of the Mandamus Case.  The communication occurred in private – Lantz asked for caucus time.  Defendants assert without contradiction that they were unaware they were being recorded and the content of their conversation makes clear they were not aware of the recording and would not have consented to it had they been aware.  The conversation is in a private portion of a pre-trial conference in a litigated case in which all three have participated and where there has apparently been a good deal of sharing of client information before this point in time.  The discussion is about strategy – next steps and likely conduct of the Magistrate.

The question turns, then, on whether the crime-fraud exception applies.  In urging that it does, Walker relies entirely on Ohio case law authority[7] (Third-Party Memorandum Doc. No. 61, PageID 474-79).   However, it is not Ohio privilege law that governs here.  Questions of privilege are to be determined by federal common law in federal question cases.  *Reed v. Baxter,* 134 F.3d 351, 355 (6th Cir. 1998); *Reg'l Airport Auth. v. LPG, LLC,* 460 F.3d 697 (6th Cir. 2006).  The Complaint in this case avers that it arises "under the First and Fourteenth Amendments to the United States Constitution, including the Due Process Clause of the Fourteenth Amendment, the Equal Protection Clause, the Privileges and Immunities Clause of Article IV, and 42 U.S.C. Section [sic] 1983 and 1988." (Doc. No. 1, PageID 2, ¶ 2.)  Undoubtedly the Court's subject

---

[7] Walker's sole citation to federal authority is to *Swidler & Berlin v. United States*, 524 U.S. 399, 403 (1998) for the proposition that "[t]he attorney-client privilege is one of the oldest recognized privileges for confidential communications." (Third-Party Memorandum, Doc. No. 61, PageID 473.)  That proposition is not controversial and in fact Defendants cite *Swidler* for precisely the same proposition (Defendants' Memorandum, Doc. No. 60, PageID 462).

matter jurisdiction in this case is conferred by 28 U.S.C. § 1331 and/or § 1343. It is therefore the federal common law of privilege which applies.

Federal law also recognizes the crime-fraud exception. The Sixth Circuit has held attorney-client privilege has no application to legal advice in aid of a fraudulent scheme or criminal activity. *In re Antitrust Grand Jury*, 805 F.2d 155, 162 (6th Cir. 1986). The burden of proof of the exception is on the party seeking to defeat the privilege who must make a prima facie showing that a crime or fraud had been committed or was specifically intended to be committed by the client. *Id.*

Walker asserts that the conversation shows a conspiracy "to thwart the civil justice system and work to deny Verhovec a meaningful day in court." (Third-Party Memorandum, Doc. No. 61, PageID 473.) In his Objections to the Order for Prejudgment Possession, Walker averred that Defendants "gathered planned and discussed witness intimidation and spoliation of evidence." (Doc. No. 44, PageID 337.)

Having carefully reviewed the attorney conversation in the context of the Mandamus Case and the conference being conducted, the Court is not persuaded the crime-fraud exception applies. The discussion[8] is about defending the Mandamus Case and what the likely next steps will be, given that Magistrate Fuchsman turned the conference in the direction of a negotiated settlement rather than the pending summary judgment motion. Counsel are discussing how appropriately to deal with Redflex, a vendor under contract, who was not a party to the Mandamus Case but whose addition to the case had been discussed by Magistrate Fuchsman. They were concerned about the content and interpretation of the Redflex contract and what discovery from Redflex might reveal.

---

[8] The Court here characterizes the conversation rather than quoting it in order to preserve the privilege while filing this Decision publicly.

There is no suggestion in the conversation of any intended crime or fraud. Negotiation with a vendor about its contract is not "witness intimidation." Vigorous defense of a public records mandamus action is not a conspiracy to deny the mandamus relator "a meaningful day in court." Respondents had already filed a summary judgment motion intended to deny Verhovec a trial by asserting he had no right to a trial. Whether or not Respondents were entitled to summary judgment, filing a summary judgment motion and discussing its defense are not crimes or frauds.

The Court finds that the Trotwood Caucus portion of the March 23, 2012, conference is a protected attorney-client communication and the privilege is not forfeited under the crime-fraud exception. Walker's substantive objection should be overruled.

As noted, Attorney Cushion was stricken with the illness which has assertedly incapacitated him on February 18, 2015 (See Notice to the Court, Doc. No. 53, PageID 426). Prior to that date, the Clerk had already entered the default of Mr. Cushion and his law firm on February 6, 2015 (Doc. No. 47). Because the Court has been unable to establish contact with Attorney Cushion, the Court ORDERS Plaintiff to advise the Court, not later than April 6, 2015, whether Mr. Cushion will continue to represent him in this case or whether some other attorney will substitute for Mr. Cushion or Mr. Verhovec will proceed *pro se*. Walker's First Motion to Stay (Doc. No. 56) is GRANTED to the extent set forth in this paragraph and otherwise denied.

Attorney Walker asked for a forty-five day extension of his time to respond to the outstanding discovery requests from Defendants, premised on (1) the pendency of the *in camera* inspection and (2) his need to consult with Cushion and Cushion's records. The *in camera* inspection has now occurred and Walker's objections to attorney-client privilege found to be without merit. His second justification for delay is unsubstantiated with sufficient detail for the

Court to credit it. Walker's Motion to Stay Discovery is DENIED and he shall respond to Defendants' discovery requests forthwith.

March 25, 2015.

s/ *Michael R. Merz*
United States Magistrate Judge
