# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

EDWARD VERHOVEC,

|  |  |  |  |
|---|---|---|---|
| | Plaintiff, | : | Case No. 3:14-cv-363 |
| | | | |
| | | | District Judge Walter Herbert Rice |
| -  vs  - | | | Magistrate Judge Michael R. Merz |
| CITY OF TROTWOOD, OHIO, et al., | | | |
| | | | |
| | Defendants. | : | |

---

# SUBSTITUTED REPORT AND RECOMMENDATIONS ON DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

---

This case is before the Court on Defendants' Motion for Judgment on the Pleadings (Doc. No. 48). Plaintiff filed no opposition and the Court struck Counterclaim Defendant Walker's Response on grounds he had no standing to be heard on the Motion since he does not represent Verhovec in this case.[1] On April 21, 2015, the Magistrate Judge filed a Report and Recommendations recommending that the Motion be granted (the "Report," Doc. No. 75).

Although he had filed no response to the Motion, Plaintiff, with the assistance of new counsel, filed Objections on May 5, 2015 (Doc. No. 79) as did William Walker (Doc. No. 80). District Judge Rice recommitted the matter for reconsideration in light of the Objections (Doc. No. 81). Defendants filed Responses to the two sets of Objections (Doc. Nos. 83 & 84). The

---

[1] Defendants moved to strike the Response (Doc. No. 59) on that basis and Walker did not oppose the Motion.

parties presented oral arguments on the Motion on June 23, 2015, making it ripe for decision on recommittal.  Because all argument opposing the Motion has been made in the objections and oral argument, the Magistrate Judge files this Substituted Report so that the reader need not advert to the original Report.

**Legal Standard for Deciding the Motion**

In ruling on a motion for judgment on the pleadings, the Court must accept all well-pleaded material allegations of the complaint as true.  *JPMorgan Chase Bank, N.A. v. Winget,* 510 F.3d 577, 581 (6th Cir. 2007); *Ziegler v. IBP Hog Mkt., Inc*., 249 F.3d 509, 511-12 (6th Cir. 2001); *Paskvan v. City of Cleveland Civil Serv. Comm'n.*, 946 F.2d 1233, 1235 (6th Cir. 1991), *citing Beal v. Missouri Pacific R.R.,* 312 U.S. 45, 51 (1941).  The Court must then decide whether the moving party is entitled to judgment as a matter of law.  *Lavado v. Keohane,* 992 F.2d 601, 605 (6th Cir. 1993).  This is the same standard applied in deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  *Tucker v. Middleburg-Legacy Place,* 539 F.3d 545, 549 (6th Cir. 2008); *EEOC v. J. H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001).

The test for dismissal under Fed. R. Civ. P. 12(b)(6) has been re-stated by the Supreme Court:

> Factual allegations must be enough to raise a right to relief above the speculative level,  see 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed.2004)("[T]he pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the assumption that all the allegations in the complaint are true (even if doubtful in fact), *see, e.g., Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508, n. 1, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989)("Rule

2

> 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely").

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

> [W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, "'this basic deficiency should ... be exposed at the point of minimum expenditure of time and money by the parties and the court.'" 5 Wright & Miller § 1216, at 233-234 (quoting *Daves v. Hawaiian Dredging Co.*, 114 F. Supp. 643, 645 (D. Hawaii 1953) ); see also *Dura [Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005)], at 346, 125 S.Ct. 1627, 161 L. Ed. 2d 577; *Asahi Glass Co. v. Pentech Pharmaceuticals, Inc.*, 289 F. Supp. 2d 986, 995 (N.D.Ill.2003) (Posner, J., sitting by designation) ("[S]ome threshold of plausibility must be crossed at the outset before a patent antitrust case should be permitted to go into its inevitably costly and protracted discovery phase").

*Twombly*, 550 U.S. at 558 (*overruling Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), and specifically disapproving of the proposition from *Conley* that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"); *see also Association of Cleveland Fire Fighters v. City of Cleveland, Ohio,* 502 F.3d 545 (6th Cir. 2007).

In *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), the Supreme Court made it clear that *Twombly* applies in all areas of federal law and not just in the antitrust context in which it was announced. "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555, *citing Papasan v. Allain*, 478 U.S. 265, 286

(1986)(on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation.")

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [*Twombly*], at 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Ibid. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.,* at 557, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (brackets omitted).

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id*., at 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id,* at 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F.3d at 157-158. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not "show[n]" -- "that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

4

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the  assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 556 U.S. at 678; *see also Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008), *citing League of United Latin Am. Citizens. v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007).  *Twombly* expressly overruled *Conley v. Gibson, supra*, on which Verhovec relies.  *Twombly*, 550 U.S. at 558.


**Procedural Posture of the Motion:**


### The Motion is Properly Treated as a Motion for Judgment on the Pleadings


This case arises out of a prior public records action in the Montgomery County Common Pleas Court which Walker filed on behalf of Verhovec (*State of Ohio ex rel Verhovec v. Trotwood*, Case No. 2011 CV 04658, the "Public Records Action").  Defendants in that case, the City of Trotwood, Ohio, and its City Manager, Michael Lucking, had filed a motion for summary judgment which Magistrate David Fuchsman set for oral argument on March 23, 2012.  The gathering morphed into a discussion of possible settlement of the case and Magistrate Fuchsman asked Walker to consult his then-client Verhovec about a possible settlement.  After Walker left the room, the remaining participants in the conference, attorneys Stephen McHugh, Amelia Blankenship, and Kevin Lantz stayed in the room and Mr. Lantz asked if they could have some

time to caucus. Magistrate Fuchsman then left the room and the Trotwood attorneys spoke among themselves alone (the "Trotwood Caucus").

Without the knowledge or consent of any of the other participants, Walker surreptitiously recorded much of the conference, including the private Trotwood Caucus. The Report relies in part on the Magistrate Judge's review of the recording Walker made of the Trotwood Caucus (Notice, Doc. No. 55).

Verhovec objects that this is matter "outside the pleadings," and that Fed. R. Civ. P. 12(d) requires the Court to treat the Motion as one for summary judgment if it considers such matter (Doc. No. 79, PageID 587). Fed. R. Civ. P. 12(d) provides "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment." However, when a defendant attaches to a motion for judgment on the pleadings documents which are referenced in but not attached to the complaint, the court may consider the motion as being made under Rule 12(c), rather than converting it to a motion for summary judgment. *Weiner v. Klais & Co.*, 108 F.3d 86 (6th Cir. 1997).

Verhovec's Second and Third Claims for Relief depend entirely on what Verhovec pleads occurred in that conversation which in turn is pled as based on his "review" of a recording of that conversation. On the Court's Order, Verhovec delivered what he represented was his only copy of that recording to the Defendants who then delivered it to the Magistrate Judge who then reviewed it *in camera* at Verhovec's and Walker's request on their assertion of the crime-fraud exception to attorney-client privilege. Thus reliance on the contents of the recorded conversation in deciding the Motion comes well within *Weiner, supra.*: Verhovec referred to the content of the

6

recording but did not attach it to the Complaint.  Defendants then furnished the recording to the Court.

### Verhovec's Failure to Oppose the Motion before the Report

As noted in the Report, Verhovec filed no memorandum in opposition to the Motion before the Report was filed (Doc. No. 75, PageID 554-55).  He now argues that was the result of excusable neglect because his prior counsel, Paul Cushion, "suffered a severe and debilitating stroke," rendering him incapable of communicating with Verhovec and Verhovec "was likewise never served with the Magistrate's March 26, 2015 Order telling him to notify the Court whether Attorney Cushion … would continue to represent him, if he would be represented by substitute counsel, or if he would be proceeding *pro se*."  (Doc. No. 79, PageID 588.)

Verhovec's claim that he was never served with the March 26th Order is completely belied by Verhovec's having filed timely *pro se* Objections to the Order on April 9, 2015 (Doc. No. 68).

Regarding Mr. Cushion, the Court has made numerous unsuccessful efforts to confirm Mr. Cushion's medical status (Doc. No. 66, PageID 505).  As of the date of this Report, ninety days later, Walker's representations about Cushion's medical condition remain uncorroborated. At oral argument both Mr. Carter and Mr. Walker advised that they have been unable to talk with him despite efforts to do so.  Mr. Carter also advised the Ohio Supreme Court has appointed an attorney to take over some of Mr. Cushion's caseload, but neither Carter nor Walker has been able to obtain files from him.

Whether or not Verhovec has shown excusable neglect, for the sake of completeness and in compliance with the Recommittal Order, the Magistrate Judge will deal with the Verhovec's Objections on their merits.

### Walker's Objections

Mr. Walker has also filed Objections to the Report (Doc. No. 80).[2] Mr. Walker does not represent Verhovec in this case, although he did in the Public Records Action. Thus he has no more standing to object to the Report than he did to file a response in opposition. Nevertheless, Defendants did not move to strike his Objections and he was fully heard at the oral argument. Again, in the interest of completeness and in compliance with the Recommittal Order, the Magistrate Judge will deal with the Verhovec's Objections on their merits.

### Plaintiff's Complaint

Plaintiff Verhovec brought this action under 42 U.S.C. § 1983 to complain that Defendants had conspired to deprive him of meaningful access to the Ohio courts and to retaliate against him for exercising his First Amendment rights (Complaint, Doc. No. 1, PageID 1 & 4 at caption and ¶ 16).

 Defendants Lucking, McHugh, and Blankenship are sued in both their official

and individual capacities. *Id.* at PageID 3, ¶¶ 5, 7, 9. The City of Trotwood is asserted to be

liable because Verhovec avers that Lucking and McHugh are final policy-making officials of the

---

[2] The document is captioned "Plaintiff/Third-Party Defendant William Walker, Jr. Esq. Objections . . . ." Walker is neither a plaintiff nor a third-party defendant, but a defendant on the Counterclaim.

City and to have committed the acts harming Verhovec pursuant to a policy they adopted. *Id.* at PageID 4, ¶¶ 13, 14.

The Complaint alleges that on June 15, 2011, Verhovec made a public records request of the City of Trotwood through Lucking by way of a letter, a copy of which is attached to the Complaint as Exhibit A (Doc. No. 1, PageID 15). The request was pursuant to the Ohio Public Records law, Ohio Revised Code § 149.43 and sought records "pertaining to the City's traffic photoenforcement program." *Id.* at PageID 5, ¶ 19. Unsatisfied with the City's response, Verhovec two weeks later on June 29, 2011, filed the Public Records action combining a mandamus claim under Ohio Revised Code § 149.43(C)(1) and a "statutory forfeiture action for the unlawful disposal of public records" under Ohio Revised Code § 149.351. *Id.* at PageID 5, ¶ 22, and attached Exhibit E, PageID 31-36. The initiating document contains Walker's signature which has been struck through by Verhovec who then signed the verified complaint *pro se*. *Id.* at PageID 36.

In response to the Public Records Action complaint, on July 26, 2011, Trotwood and Lucking filed an Answer and Counterclaim, a copy of which is attached to the Complaint as Exhibit F (Doc. No. 1, PageID 40-49). Verhovec reads the Counterclaim as pleading claims against him for vexatious conduct under Ohio Revised Code § 2323.52(A), frivolous conduct under Ohio Revised Code § 2323.51, and was a pretext to create liability under Ohio Revised Code § 149.351 (Complaint, Doc. No. 1, PageID 6, ¶¶ 24-27). A First Amended Counterclaim was filed

in the Public Records Action on June 3, 2013. *Id.* at ¶¶ 34-35.


**First Claim for Relief:  A Frivolous Counterclaim in the Public Records Action Violates Verhovec's Constitutional Rights**

Verhovec's First Claim for Relief asserts:

> In retribution for VERHOVEC's petition for judicial relief, Defendants infringed upon VERHOVEC's fundamental free speech rights by filing a counterclaim against VERHOVEC that was unsupported by fact or law and which attempted to apply a statute in ex post facto fashion against VERHOVEC.

*Id*. at PageID 8, ¶ 42. The method by which the original Counterclaim is said to have harmed Verhovec is that Defendants kept it pending for 679 days until the First Amended Counterclaim was filed, thereby making the Public Records Action more expensive. *Id*. at PageID 8-9, ¶ 44-45. These actions by Defendants are alleged to have violated Verhovec's rights to free speech, petition, and access. *Id*. at PageID 9-10, ¶ 50.

**Statute of Limitations Defense**

Defendants first seek judgment on the basis that the First Claim for Relief is barred by the statute of limitations (Motion, Doc. No. 48, PageID 351-52).

In all constitutional tort actions under 42 U.S.C. § 1983, federal courts borrow the statute of limitations for personal torts from the State where the claim arose. *Hardin v. Straub,* 490 U.S. 536 (1989). The statute of limitations under Ohio law for actions brought pursuant to 42 U.S.C. § 1983 is two years. Ohio Revised Code § 2305.10. *Nadra v. Mbah*, 119 Ohio St. 3d 305, 2008-Ohio-3918 (2008); *Banks v. City of Whitehall*, 344 F.3d 550, 551 (6th Cir. 2003), *citing Browning v. Pendleton*, 869 F.2d 989 (6th Cir. 1989)(en banc).

Verhovec knew or had reason to know of the filing of the original Counterclaim in the Public Record Action shortly after it was filed on July 26, 2011, because it was mailed to him on

that date (see Certificate of Service, PageID 49).  This action was not filed until March 21, 2014

(Doc. No. 1).  Prima facie, then, the First Claim for Relief is barred by the statute of limitations,

as the Report concluded (Doc. No. 75, PageID 558).

Walker asserts the statute is tolled by Defendants' "continuing violations" of Verhovec's

constitutional rights by keeping their abusive counterclaim pending for an additional 679 days or

until June 3, 2014    (Objections, Doc. No. 80, PageID 606-07, relying on *Tolbert v. Ohio Dept.*

*of Transp.,* 172 F.3d 934, 940 (6th Cir. 1999)).

As to the continuing violation theory, the Sixth Circuit has held:

> The test for determining whether a continuing violation exists is
> summarized as follows: First, the defendant's wrongful conduct
> must continue after the precipitating event that began the pattern. .
> . . Second, injury to the plaintiff must continue to accrue after  that
> event. Finally, further injury to the plaintiff[] must have been
> avoidable if the defendants had at any time ceased their wrongful
> conduct.  *Tolbert v. State of Ohio Dep't of Transp.*, 172 F.3d 934,
> 940 (6th Cir. 1999). *See also, Paschal v. Flagstar Bank*, 295 F.3d
> 565, 572 (6th Cir. 2002). "[A] continuing violation is occasioned
> by continual unlawful acts, not continual ill effects from an
> original violation." *Tolbert*, 172 F.3d at 940 (quoting *National*
> *Advertising Co. v. City of Raleigh,* 947 F.2d 1158, 1166 (4th Cir.
> 1991)). Passive inaction does not support a continuing violation
> theory. *Id.*; *Paschal*, 295 F.3d at 573.

*Eidson v. Tenn. Dep't of Children's Servs*., 510 F.3d 631 (6th Cir. 2007).  Plaintiff does not plead

any further affirmative acts by Defendants after the filing of the Initial Counterclaim, but merely

that it continued to pend.  In *Eidson*, the plaintiff was accused of child sexual abuse.  Local

children's services agencies removed his children and started legal proceedings against him.  In

affirming a time-bar dismissal, the Sixth Circuit distinguished arguably unlawful conduct from

continuing ill effects of such conduct and held that latter do not constitute a continuing violation.

The passive allowing of the Initial Counterclaim to pend is far less affirmative action than the Sixth Circuit found to be insufficient to toll the statute in *Eidson*.

Verhovec, in contrast, claims the statute did not begin to run until he learned of the March 23, 2012, recording (Verhovec Objections, Doc. No. 79, PageID 589). He does not state when that happened, but it was obviously less than two years before the case. *Id.* He is of course charged with knowledge of the conversation when it happened because it was his attorney, Mr. Walker, who recorded the conversation. This position implies that Verhovec suffered no harm when the original Counterclaim was filed, but only when he learned of the privileged conversation. He does not explain how that would happen, merely stating that the "recording … primarily forms the basis of this complaint. . . ." *Id.*

Federal law determines when the statute of limitations for a civil rights action begins to run. *Wallace v. Kato*, 549 U.S. 384 (2007). The statute runs from "when the plaintiff knows or has reason to know of the injury which is the basis" of the claim. *Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 856 (6th = Cir. 2003). The standard rule is that the right accrues when a plaintiff has a complete and present cause of action. *Id*. That is when the plaintiff can file suit and obtain relief. *Id*., *citing Bay Area Laundry& Dry Cleaning Pension Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192 (1997).

On Plaintiff's theory, the unconstitutional act of Defendants was filing the original Counterclaim. On his reading of the recorded conversation, he discovered on March 23, 2012, additional evidence that the Counterclaim was frivolous, not that it had been filed at all.

It is therefore recommended that the First Claim for Relief be dismissed as barred by the statute of limitations.

**Res Judicata Defense**


Defendants also seek dismissal of the First Claim for Relief on the basis of *res judicata,* asserting that the claim could have been raised in the Public Records Action but was not and is therefore barred by the final judgment in that action (Motion, Doc. No. 48, PageID 352-57).

Federal courts in subsequent litigation are obliged to give prior state court judgments the same effect those judgments would be given in the courts of the rendering State. 28 U.S.C. §1738; *Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373 (1985); *Migra v. Warren City School District Board of Edn.,* 465 U.S. 75 (1984); *Kremer v. Chemical Constr Corp.,* 456 U.S. 461 (1982); *Trafalgar Corp. v. Miami County Bd. Of Comm'rs,* 519 F.3d 285 (6th Cir. 2008), *citing Hamilton's Bogarts, Inc. v. State of Michigan*, 501 F.3d 644, 650  (6th Cir. 2007); *Gutierrez v. Lynch*, 826 F.2d 1534  (6th Cir. 1987); *McNasby v. Crown Cork and Seal Co., Inc.,*  888 F.2d 270 (3rd Cir. 1989).   At oral argument all counsel agreed that § 1738 governs application of *res judicata*  in this case.

Under Ohio law:

> A valid, final judgment rendered upon the merits bars all
> subsequent actions based upon any claim arising out of the
> transaction or occurrence that was the subject matter of the
> previous action.

*Grava v. Parkman Twp*., 73 Ohio St. 3d 379 (1995), syllabus;Paragraph two of the syllabus of *Norwood v. MacDonald,* 142 Ohio St. 299 (1943), overruled; paragraph two of the syllabus of *Whitehead v. Gen. Tel. Co*., 20 Ohio St. 2d 108 (1969), overruled to the extent inconsistent herewith; paragraph one of the syllabus of *Norwood, supra*, and paragraph one of the syllabus of *Whitehead, supra,* modified; 1 Restatement of the Law 2d, Judgments (1982), §§ 24-25,

approved and adopted.)

This Court has recognized that the relevant Ohio claim preclusion doctrine is set forth in

*Grava v. Parkman, supra*:

> In Ohio, a party seeking to invoke the doctrine of *res judicata* must prove four elements: (1) a prior final, valid decision on the merits by a court of competent jurisdiction; (2) a second action involving the same parties or their privies, as the first; (3) a second action raising claims that were or could have been litigated in the first action; and (4) a second action arising out of the transaction or occurrence that was the subject matter of the previous action.

*Ater v. Follrod,* 238 F. Supp. 2d 928, 937 (S.D. Ohio 2002)(Holschuh, J.), *quoting In re Fordu*, 201 F.3d 693, 703-04 (6th Cir. 1999)(construing Ohio law).

As all counsel agreed at oral argument, the Ohio courts have concurrent jurisdiction with the federal courts over claims arising under 42 U.S.C. § 1983. *Howlett v. Rose*, 496 U.S. 356 (1990). All three claims for relief in the Complaint purport to be brought under § 1983, so as Defendants argue, Verhovec could have amended his complaint in the Public Record Action to assert his First Claim for Relief. Because he did not and that case has been dismissed with prejudice, the Report concluded the First Claim for Relief here should be dismissed with prejudice as barred by *res judicata* (Doc. No. 75, PageID 560).

Verhovec argues *res judicata* does not bar his claims because it involves different parties and different causes of action (Objections, Doc. No. 79, PageID 589-91). He asserts that Ohio law supports his position, relying on *Duncan v. Peck*, 752 F.2d 1135 (6th Cir. 1985). In *Duncan* Judge Merritt, recognizing his court's obligation under 28 U.S.C. § 1738 to apply Ohio law, relied entirely on *Norwood v. McDonald, supra.* But the Ohio Supreme Court overruled *Norwood* in *Grava v. Parkman, supra*, and Ohio no longer requires identity of causes of action

14

for *res judicata* to apply.  And there can be no doubt that Defendants McHugh and Blankenship are in privity with Trotwood and Lucking.  See *Johnson's Island, Inc., v. Board of Twp. Trustees,* 69 Ohio St. 2d 241 (1982);  *Kirkhart v. Keiper*, 101 Ohio St. 3d 377 (2002).

Therefore Verhovec's First Claim for Relief should be dismissed with prejudice as barred by *res judicata*.


**Release**


Defendants assert that the First Claim for Relief is barred by the release which terminated the Public Records Action (Answer, Doc. No. 12, PageID 148-55).  Therefore the Report concluded that to the extent the First Claim for Relief attempts to resurrect any claim for damages arising from any asserted failure of Defendants to produce public records, it is barred by the Mutual Release (Doc. No. 75, PageID 560).

Verhovec notes that Ohio law requires releases of future liability to be narrowly construed (Objections, Doc. No. 79, PageID 591-93).  The Release by its own terms applies only to claims raised in the Public Records Action (Mutual Release, Ex. 1 to Doc. No. 12, PageID 149).

Verhovec also argues that the Mutual Release is voidable for fraud because he did not know at the time he signed it of what was said in the recorded conversation (Objections, Doc. No. 79, PageID 592).  However, Walker, who negotiated the release on Verhovec's behalf, knew of the contents of the recorded conversation because he recorded it.

Walker's only objection on the release defense is that it was not attached to the pleadings (Doc. No. 80, PageID 608).  That is plainly incorrect – the Release is attached to the Counterclaim at Doc. No. 12-1, PageID 148-55.

Therefore it is again respectfully recommended that the First Claim for Relief, to the extent it attempts to revive any claim for damages on account of records not produced in the Public Records Action, should be dismissed with prejudice.

**Second Claim for Relief:  Violation of Verhovec's Constitutional Rights by Spoliation and Witness Intimidation During the Trotwood Caucus**

In his Second Claim for Relief, Verhovec asserts that the spoliation and witness intimidation which occurred during the Trotwood Caucus deprive him of meaningful access to the courts, due process of law, and equal protection of the laws (Complaint, Doc. No. 1, PageID 11, ¶ 58).

42 U.S.C. § 1983, R.S. § 1979, was adopted as part of the Act of April 20, 1871, and reads, as amended:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress , except that in any action brought against a judicial officer, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.  For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

16

The statute creates a cause of action sounding essentially in tort on behalf of any person deprived of a constitutional right by someone acting under color of state law. *City of Monterey v. Del Monte Dunes at Monterey, Ltd.,* 526 U.S. 687, 709 (1999); *Memphis Community School District v. Stachura,* 477 U.S. 299 (1986); *Carey v. Piphus,* 435 U.S. 247 (1978).  The purpose of § 1983 is to deter state actors from using the badge of  their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails.  *Wyatt v. Cole*, 504 U.S. 158 (1992).  In order to be granted relief,  a plaintiff must establish that the defendant deprived him of a right secured by the U.S.  Constitution and the laws of the United States and that the deprivation occurred under  color of state law.  *See West v. Atkins,* 487 U.S. 42, 48 (1988); *Flagg Brothers Inc. v. Brooks*, 436 U.S. 149, 155 (1978).

The Report concluded the Second Claim for Relief failed to state a claim under 42 U.S.C. § 1983, the law under which it was pled, because its sole factual basis was what was said during the Trotwood Caucus "and that conversation does not constitute spoliation, report past spoliation, or plan future spoliation, not [sic] does it report past or plan future witness intimidation." (Report, Doc. No. 75, PageID 561-67.)

In objecting to this conclusion, Verhovec argues "[t]he First Amendment protects the right to receive information. " (Doc. No. 79, PageID 595, citing *Stanley v. Georgia*, 394 U.S. 557 (1969), and *Neinast v. Board of Trustees of Columbus Metropolitan Library*, 346 F.3d 585, 591 (6th Cir. 2003)).  In *Stanley*, the Supreme Court upheld the right of persons to possess  obscene matter in private, but that right does not extend to possession of obscene matter which includes depictions of minors engaged in sexual conduct.  *New York v. Ferber*, 458 U.S. 747 (1982)(child pornography is not protected speech).  In *Neinast*, the Sixth Circuit held that the right to obtain information at a public library does not extend to entering the library barefoot.  The point is that

a First Amendment right to possess information is hardly absolute and Verhovec cites no authority constitutionalizing discovery in a civil case or obtaining documents under the Ohio Public Records Act. Assuming *arguendo* that Verhovec had a right to obtain records from Trotwood either in discovery under the Ohio Rules of Civil Procedure or under Ohio Revised Code § 149.43, violation by the Defendants of either of those rights would not violate the United States Constitution.

Failure to abide by state law is not itself a constitutional violation. *Roberts v. City of Troy*, 773 F.2d 720 (6th Cir. 1985). Violation by a State of its own procedural rules does not necessarily constitute a violation of due process. *Bates v. Sponberg*, 547 F.2d 325 (6th Cir. 1976); *Ryan v. Aurora City Bd. of Educ.*, 540 F.2d 222, 228 (6th Cir. 1976). "A state cannot be said to have a federal due process obligation to follow all of its procedures; such a system would result in the constitutionalizing of every state rule, and would not be administrable." *Levine v. Torvik*, 986 F.2d 1506, 1515 (6th Cir. 1993), *cert. denied,* 509 U.S. 907 (1993), overruled in part on other grounds by *Thompson v. Keohane,* 516 U.S. 99 (1995).

Walker's Objections as to the Second Ground for Relief assert "[i]f any rule in federal civil procedure deserves the label 'blackletter,' it is notice pleading." (Doc. No. 80, PageID 609-10, citing *Conley v. Gibson,* 355 U.S. 41 (1957)). Conley's interpretation of Fed. R. Civ. P. 8 was expressly overruled by the Supreme Court in *Twombly*, 550 U.S. at 558. He also argues "the right to sue and defend in the courts . . . is the right conservative of all other rights, and lies at the foundation of orderly government. It is one of the highest and most essential privileges of citizenship. . . ." (Doc. No. 80, PageID 610, quoting *Chambers v. Baltimore & Ohio Railroad Co*., 207 U.S. 142, 148 (1907)). In *Chambers* the same Supreme Court that gave the nation *Lochner v. New York,* 198 U.S. 45 (1905), held that the widow of a railroad employee killed on

the job could not sue the railroad.  Thus it seems a strange authority to be cited by a Plaintiff attempting to expand his rights.  But on its face *Chambers* equates the right to sue and the right to defend.  How could it be that Verhovec has a constitutional right to sue, but Trotwood infringes on that right by defending itself with a counterclaim?  Walker's authority is not persuasive.

Because it does not state a claim upon which relief can be granted under § 1983, the Second Claim for Relief should be dismissed.  Because Verhovec has not proposed an amendment which would correct this deficiency, the dismissal should be with prejudice.

Defendants also seek dismissal of the Second Claim for Relief on *res judicata* grounds. On the analysis of that defense as to the First Claim for Relief, the Second Claim should also be dismissed.

**Third Claim for Relief:  Conspiracy to Deprive of Constitutional Rights**

The Report noted that "[w]hile Verhovec labels his "Third Claim for Relief" as "Conspiracy," he nowhere pleads a conspiracy in the Complaint."  (Report, Doc. No. 75, PageID 568.)

Walker objects by reciting the elements of a conspiracy under North Carolina law, without any suggestion why North Carolina law applies (Objections,  Doc. No. 80, PageID 611). Verhovec cites Ohio law instead (Doc. No. 79).  The claim made in the Complaint, however, is of conspiracy to deprive of a federal constitutional right under 42 U.S.C. § 1983.

The standard governing a § 1983 conspiracy claim is:

> A civil conspiracy is an agreement between two or more persons to
> injure another by unlawful action. Express agreement among all

> the conspirators is not necessary to find the existence of a civil conspiracy. Each conspirator need not have known all of the details of the illegal plan or all of the participants involved. All that must be shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant.

*Heyne v. Metropolitan Nashville Public Schools*, 655 F.3d 556, 563 (6th Cir. 2011), *quoting Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003)(*quoting Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)). Although circumstantial evidence may prove a conspiracy, "[i]t is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Hooks, quoting Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987); *accord Farhat v. Jopke*, 370 F.3d 580, 599 (6th Cir. 2004). That pleading standard is "relatively strict." *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008).

Judged against the federal standard, the Third Claim for Relief is deficient.  After incorporating the prior paragraphs of the Complaint, the Third Claim reads in its entirety:

> 60. Each and all of the acts of defendants were done by them, not as individuals, but by virtue of and under their authority as the City's officials and policy makers, and under color of state law.

> 61. Each and all of acts of defendants were done under the pretense of good cause and the statutes, ordinances, regulations, customs, and usages of the State of Ohio.

> 62. The acts of each defendant were committed at the direction of the City's policy makers, or with the policy maker's knowledge and consent, or were afterward approved and ratified by the policy maker.

> 63. Each defendant deprived VERHOVEC of his right to judicially petition for a redress of his grievances, due process of the law,

20

> equal protection of the law to meaningfully prosecute state causes
> of action described hereinabove.

(Complaint, Doc. No. 1, PageID 11-12.)  Paragraphs 60 and 61 are color of law averments. Paragraph 62 is the "policy" allegation needed to hold Trotwood liable for the acts of its employees.  Paragraph 63 is a repeated assertion of the constitutional rights allegedly violated. There is no allegation of an agreement or of any overt act, both of which are necessary elements of a conspiracy claim.  Nor has Verhovec proposed an amendment that would cure those deficiencies.

In addition to the failure to plead a claim, the Third Claim for Relief is also subject to dismissal on *res judicata*  and release basis on the same reasoning as applied to the first two claims for relief.

## Qualified Immunity

The individual Defendants have pled the defense of qualified immunity.  The original Report found it unnecessary to discuss that defense because the Motion was unopposed at that time.  It is still not necessary for the Court to reach that claim if it accepts the foregoing conclusions.  For the sake of completeness, however, and because it was argued orally, analysis of that defense is provided here.

Government officials performing discretionary functions are afforded a qualified immunity under 42 U.S.C. § 1983 as long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800 (1982); *Christophel v. Kukulinsky*, 61 F.3d 479, 484 (6th Cir. 1995);

*Adams v. Metiva*, 31 F.3d 375, 386 (6th Cir. 1994); *Flatford v. City of Monroe*, 17 F.3d 162 (6th Cir. 1994).  The question is not the subjective good or bad faith of the public official, but the objective legal reasonableness" of his or her action in light of clearly established law at the time the official acted.  *Anderson v. Creighton*, 483 U.S. 635 (1987).

Qualified immunity analysis involves three inquiries: (i) "whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred;" (ii) "whether the violation involved a clearly established constitutional right of which a reasonable person would have known;" and (iii) "whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 302 (6th Cir. 2005), *quoting  Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003). Qualified immunity must be granted if the plaintiff cannot establish each of these elements. *Williams ex rel. Allen v. Cambridge Bd. of Educ.*, 370 F.3d 630, 636 (6th Cir. 2004).

In order for the violated right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he or she is doing violates that right;  in light of pre-existing law, the unlawfulness of the official's action must be apparent. *Anderson v. Creighton*, 483 U.S. at 640.  The right must be defined at the appropriate level of specificity to determine whether it was clearly established at the time the defendants acted. *Wilson v. Layne*, 526 U.S. 603, 615 (1999), *citing Anderson v. Creighton.*  The test is whether the law was clear in relation to the specific facts confronting the public official when he acted; the constitutional right must not be characterized too broadly without considering the specific facts of the case.  *Guercio v. Brody*, 911 F.2d 1179 (6th Cir. 1990).  The contours of the right

22

must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. *Russo v. City of Cincinnati,* 953 F.2d 1036, 1042 (6th Cir. 1992). Although the very action in question need not have previously been held unlawful, its unlawfulness must be apparent in light of pre-existing law. *Id.* An action's unlawfulness can be apparent from direct holdings, specific examples described as prohibited, or from the general reasoning that a court employs. *Burchett v. Kiefer*, 310 F.3d 937 (6th Cir. 2002), *citing Hope v. Pelzer,* 536 U.S. 730 (2002). As to how precisely in point precedent must be to "clearly establish" the right, see *Taylor v. Barkes,* 135 S. Ct. 2042 (2015).

When a defendant moves to dismiss based on qualified immunity, the question is whether the complaint alleges violation of a clearly established constitutional right. *Heyne v. Metropolitan Nashville Public Schools*, 655 F.3d 556 (6th Cir. 2011), *citing Hardy v. Jefferson Cmty. Coll.*, 260 F.3d 671, 677 (6th Cir. 2001); *see also May v. Franklin Cnty. Bd. of Comm'rs*, 59 F. App'x 786, 790 (6th Cir. 2003).

There is no clearly established law holding that any of the acts Verhovec alleges the Defendants engaged in violated Verhovec's constitutional rights. Therefore Defendants Lucking, McHugh, and Blankenship are entitled to qualified immunity.

**Conclusion**


Based on the foregoing analysis, it is again respectfully recommended that the Motion for Judgment on the Pleadings be GRANTED and the Complaint dismissed with prejudice.


June 25, 2015.

s/ *Michael R. Merz*
United States Magistrate Judge


**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).